## Professional Recruiting Agreement

This Professional Recruiting Agreement ("Agreement") is executed effective ___4-6-11___ ("Date") between **PrimeLending, A PlainsCapital Company** a Texas Corporation ("Company"), and ___Cavu Partners___ a ___Georgia LLC___ ("Consultant"), who agree as follows:

1. **Engagement.** Company hereby engages Consultant on a non-exclusive basis and Consultant hereby accepts engagement as an independent consultant to Company, pursuant to the terms set forth in this Agreement.

2. **Duties.** Consultant shall provide talent acquisition services to Company and such other duties as Company and Consultant may mutually agree upon from time to time. Geographic specializations are: ___National___ excluded geographically are: ___None___. Company expects that any candidates delivered to Company by the Consultant shall be evaluated by Consultant as being capable of delivering to the Company the greater of either five (5) closed loans or $1 million in loan volume per month.

3. **Term.** The term of this Agreement shall commence on the date of this Agreement and may be terminated by either Company or Consultant without obligation at any time for any reason; provided, however, that the rights and obligations of the parties in Sections 8 - 11 and 19 below shall survive any termination of the Agreement.

4. **Compensation.** (a) (i) Company shall pay Consultant an override of ___8___ bps for a period of twelve (12) months beginning with loans closed during the ___4th___ full month of a candidate's employment with the Company provided that the candidate satisfies the minimum production standards set forth in Section 4(c). Once the override is effective, Company will forward to Consultant monthly production reports outlining closed loan volume for a candidate's previous month's production, along with payment representing the appropriate payment amount due Consultant. The Consultant shall not, however, be paid an override by the Company during the Consultant's twelve-month compensation period for any month during which the candidate's loan production fails to meet the standards set forth in Section 4(c).

    (ii) Consultant shall not be compensated pursuant to this Agreement if the candidate referred to Company has been in contact with a Company employee in the nine (9) months preceding Consultant's referral of the candidate to the Company. Consultant's will verify with the candidate regarding contact with PrimeLending in the previous 9 months, and make no attempts to recruit candidates who affirm they have been contracted by PrimeLending within that time.

    (iii) Consultant shall be entitled to compensation for a candidate that is hired by the Company within nine (9) months of the Consultant's referral of the candidate to the Company provided other conditions set forth in 4(a)(i) and (c) are met.

    (b) If applicable, Consultant shall be paid a flat fee of $___3,500___ per placement for their recruiting services. Company shall pay Consultant the agreed upon flat fee in 30 days after receiving an invoice. If the candidate resigns, is terminated, or fails to meet the production guidelines provided in Section 4(c) within the first ninety (90) days of employment by Company, Consultant agrees to replace the candidate with another candidate at no charge.

    (c) Company shall pay Consultant pursuant to this Section 4 only if the candidate referred to the Company and hired by Company satisfies the following production standards while employed by the Company: Candidate shall produce at least three closed loans per month and at least $500 (five

EXHIBIT A

hundred) thousand in total loan volume (as determined by principal amount of all loans closed) per month.

5. Taxes. Consultant shall be responsible for all of Consultant's state, federal, local, income, employment and business taxes, including without limitation estimated taxes and any and all withholding tax obligations. Consultant shall also be solely responsible for any employment reporting obligations to any state, federal or local authority with respect to Consultant's employees and/or agents.

6. Authority. Notwithstanding anything to the contrary in this Agreement, Consultant may not bind Company in any way, whether orally or in writing, and Consultant may not lead any person or entity to believe the contrary. The parties acknowledge that neither Consultant nor any agent, employee, officer, representative or independent contractor of or retained by Consultant, is or may be deemed to be an employee, partner, joint venture or agent of or with Company by reason of this Agreement. Consultant will be solely an independent contractor of Company and shall conduct all of Consultant's business in Consultant's own name.

7. Representations and Warranties. Consultant represents and warrants that this Agreement will not cause or require Consultant to breach any obligation to, or agreement or confidence with, any other person.

8. Confidentiality and Protection of Information. Consultant hereby acknowledges that Company has made (or may make) available to Consultant certain confidential and/or proprietary information of Company or licensed to Company, including without limitation trade secrets (collectively, the "Confidential Material"), and further acknowledges that Consultant has no rights in or to the Confidential Material. Except as essential to Consultant's obligations under this Agreement, neither Consultant nor any agent, employee, officer, or independent consultant of or retained by Consultant shall make any disclosure of this Agreement, the terms of this Agreement, or any of the Confidential Materials. Except as essential to Consultant's obligations under this Agreement, neither Consultant nor any agent, employee, officer, or independent consultant of or retained by Consultant shall make any duplication or other copy of any of the Confidential Material. Immediately upon request from Company, Consultant shall return to Company all Confidential Material. Consultant shall notify each person to whom any disclosure is made that such disclosure is made in confidence by such person, and that such person shall be bound by the provisions of this Section. All books, records and accounts of Company, whether prepared by Consultant or otherwise coming into the possession of Consultant, shall be the exclusive property of Company. Upon the termination of this Agreement, Consultant shall immediately deliver to the possession of the Company's employees, clients or healthcare providers' personal information from unauthorized access, destruction, use, modification, or disclosure in accordance with all deferral and state privacy laws.

9. Property of Company. All of the foregoing materials, including by without limitation, any and all copyrights, trademarks or trade name are and shall remain the property of Company.

10. Non-solicitation. While this Agreement is effective and for a period of one (1) year after this Agreement is terminated for any reason, Consultant shall not, directly or indirectly, whether as principal, agent, officer, director, employee, consultant, independent contractor or otherwise, alone, in association with or on behalf of any other person, firm, or company hire or attempt to hire any current employee of Company, assist in such hiring or encourage any current employee of Company to terminate employment with Company.

11. Governing Law. This Agreement is governed by and construed in accordance with the laws of the State of Texas, irrespective of Texas's choice-of-law principals.

12. **Further Assurance.** Each party to this Agreement shall execute and deliver all instruments and documents and take all actions as may be reasonably required or appropriate to carry out the purposes of this Agreement.

13. **Counterparts and Exhibits.** This Agreement may be executed in counterparts, each of which is deemed an original and all of which together constitute one document. All exhibits attached to and referenced in this Agreement are incorporated into this Agreement.

14. **Modification.** This Agreement may be modified only by a contract in writing executed by the party to this Agreement against whom enforcement of the modification is sought.

15. **Headings.** The Section headings in this Agreement: (a) are included only for convenience, (b) do not in any manner modify or limit any of the provisions of this Agreement, and (c) may not be used in the interpretation of this Agreement.

16. **Prior Understandings.** This Agreement and all documents specifically referred to and executed in connection with this Agreement: (a) contain the entire and final agreement of the parties to this Agreement with respect to the subject matter of this Agreement, and (b) supersede all negotiations, stipulations, understandings, agreements, representations, and warranties, if any, with respect to such subject matter, which precede or accompany the execution of this Agreement.

17. **Partial Invalidity.** Each provision of this Agreement is valid and enforceable to the fullest extent permitted by law. If any provision of this Agreement (or the application of such provision to any person or circumstance) is or becomes invalid or unenforceable, the remainder of this Agreement, and the application of such provision to persons or circumstance other than those as to which it is held invalid or unenforceable, are not affected by such invalidity or unenforceability unless such provision or the application of such provision is essential to this Agreement.

18. **Successors-in-Interest and Assigns.** Consultant shall not voluntarily or by operation of law assign, hypothecate, delegate or otherwise transfer or encumber all or any part of Consultant's rights, duties or other interests in this Agreement without the prior written consent of Company, which consent may be withheld in Company's sole and absolute discretion. Any such transfer in violation of this Section is void. Subject to the foregoing and any other restrictions on transferability contained in this Agreement, this Agreement is binding upon and inures to the benefit of the successors-in-interest and assigns of each party to this Agreement.

19. **Notices.** Each notice and other communication required or permitted to be given under this Agreement ("Notice") must be in writing. Notice is duly given to another party upon: (a) hand delivery to the other party, (b) receipt by the other party when sent by email or facsimile to the address and number for such party set forth below (provided, however, that the notice is not effective unless a duplicate copy of the Notice sent by facsimile is promptly given by one of the other methods permitted under this Section), (c) three business days after the Notice has been deposited with the United States Postal Service as first-class, certified mail, return receipt requested, postage pre-paid, and addressed to the party as set forth below, or (d) the next business day after the Notice has been deposited with the reputable overnight delivery service, postage pre-paid, addressed to the party as set forth below with next-business-day delivery guaranteed, provided that the sending party receives a confirmation of delivery from the delivery service provider.

If to Company:
PrimeLending, a PlainsCapital Company
18111 Preston Road, Suite 900
Dallas, TX 75252
Attention: [insert]
Fax: [insert]
e-mail: [insert]

If to Consultant:
Cavu Partners
2675 Breckinridge Blvd, Suite 100
Duluth, GA 30096
Attn: Nathan Heidger
Fax: 678-323-0889
e-mail: nathanh@gocavu.com

Each party shall make a reasonable, good faith effort to ensure that it will accept or receive Notices to it that is given in accordance with this Section. A party may change its address for purposes of this Section by given the other party(ies) written notice of a new address in a manner set forth above.

20. <u>Waiver.</u> Any waiver of a default or provision under this Agreement must be in writing. No such waiver constitutes a waiver of any other default or provision concerning the same or any other provision of this Agreement. No delay or omission by a party in the exercise of any of its rights or remedies constitutes a waiver of (or otherwise impairs) such right or remedy. A consent to or approval of an act does not waive or render unnecessary the consent to or approval of any other or subsequent act.

21. <u>Drafting Ambiguities.</u> Each party to this Agreement has reviewed and revised this Agreement and has had the opportunity to have such party's legal counsel review and revise this Agreement. The rule of construction that ambiguities are to be resolved against the drafting party or in favor of the party receiving a particular benefit under an agreement may not be employed in the interpretation of this Agreement or any amendment to this Agreement.

22. <u>Third Party Beneficiaries.</u> Nothing in this Agreement is intended to confer any rights or remedies on any person or entity other than the parties to this Agreement and their respective successors-in-interest and permitted assignees, unless such rights are expressly granted in this Agreement to another person specifically identified as a "Third party Beneficiary".

PrimeLending, a PlainsCapital Company (Company)
By: _____
Title: VP Human Resources

Cavu Partners, LLC [Consultant]
By: _____
Title: Partner

※ See Team Placement Fees in email. ✓
Not applicable to this document as explained by Kathleen Heck

## Production Team and Branch Manger Addendum to Loan Officer Recruiting Contract

FEE SCHEDULE for the placement of:

1) Branch Manager --$10,000 due on start date + $5,000 (Invoiced Month 10) = $15,000

   a. Each LO that is hired to the branch within 12 months of branch opening will be paid according to the attached LO recruiting agreement ($3500 + 8bps for 12 months)

2) Production/Sales Manager-- $5,000 due on start date + $2500 (Invoiced Month 10) = $7,500

   a. Each LO that is added to the branch within 12 months of branch opening will be paid according to the attached LO recruiting agreement ($3500 + 8bps for 12 months)

PrimeLending, a PlainsCapital Company (Company)—Regional Manager

By:_____

Title:_____     Date:_____

PrimeLending, a PlainsCapital Company (Company)—VP, Human Resources

By:_____

Title:_____     Date:_____

Cavu Partners, LLC (Consultant)

By:_____

Title: Vice President     Date: 8/18/11